## BURTON, Appellant, v. LOOK et al.

### Division One, May 14, 1901.

1. **Homestead:** SUBSEQUENT DEBT: ALIENATION. As between a judgment creditor and his debtor in possession of a homestead within the statutory value and extent, the judgment, founded on a debt created since the acquisition of the homestead, creates no lien whatever on the homestead and the debtor is entitled to the full enjoyment of all his rights therein, including the power of alienation.

2. ———: ———: ———: ANTEDATED NOTE. A judgment founded on a note which was antedated so as to bear date prior to the acquirement of the homestead, whereas, in fact, it was not made until some time thereafter and was then signed by the homesteader as surety, does not create any lien on the homestead, and if the homestead is afterwards sold under a deed of trust put there by the homesteader and his wife, while they occupied it as such, the property is not subject to execution and sale in the hands of the purchaser under such judgment, even though it has been revived since such foreclosure sale.

3. ———: RECITALS IN DEED OF TRUST. A homesteader does not lose his rights as such, as to third parties, by mortgaging his homestead. however he may designate himself therein. He may designate himself as a tenant and the *cestui que trust* as a landlord, yet this does not give the plaintiff in a judgment any right to execution against the homestead, either while he occupies it, or after it is sold under the deed of trust.

4. ———: REVIVAL OF JUDGMENT: ESTOPPEL. The failure of the homesteader to claim or set up a homestead in a proceeding to revive a judgment, does not preclude him or those claiming under him, from setting up a claim that the property is a homestead and therefore exempt from sale under execution issued under such revived judgment.

5. ———: SPECIAL COMMISSIONER: OATH. An objection that the testimony taken before a special commissioner was inadmissible because such commissioner failed to take the oath of office, comes too late unless the objection is made and determined before the trial court, if there is a rule of such court requiring it to be so made.

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates,* Judge.

AFFIRMED.

*Frank Titus* for appellant.

(1)   When a note is given, its execution relates back to the inception of the contract from which it arose—particularly when, as in the case at bar, the note in question was dated February 1, 1886, the time when the debt it evidences actually existed, as is shown by the evidence of the defense in the case.   County of Montgomery v. Auckley, 92 Mo. 126; Block v. Morrison, 112 Mo. 356; Morris v. Bird, 11 Mass. 436. It is in entire conformity to the law of commercial paper that a bill or note may be either antedated or postdated, and in the absence of fraud the date given the instrument binds all parties. 1 Randolph on Com. Paper, sec. 79.   A contract reduced to writing is the best possible evidence of the intent and meaning of these bound by it, and such expression should be accepted as a finality.   This is the settled law of this State.   Gooch v. Conner, 8 Mo. 392; McMurtrey v. Sparks, 71 Mo. App. 126; Tracy v. Union Iron Works, 104 Mo. 193; Miller v. Municipal Co., 133 Mo. 220; Smith's Admrs. v. Thomas, 29 Mo.

307. (2) The judgment in case 3313 on said note is conclusive, fixing the relation of debtor and creditor. Brooks v. Wilson, 125 N. Y. 261; Decker v. Decker, 108 N. Y. 128; Strong v. Lawrence, 58 Iowa 55; McAlpine v. Sweetser, 76 Ind. 78; Black on Judgments, sec. 605. (3) And all admissions in the answer of D. P. Ingraham, in case 3313, and in scire facias proceedings as well, bind his successors in interest. Miller v. Nicodemus (Neb.), 78 N. W. 618. (4) The writ of scire facias is, and serves all purposes of law, of a petition. 1 Freeman on Executions (2 Ed.), sec. 81; Bingham on Judgments, 123; 2 Freeman on Judgments, sec. 444; Ins. Co. v. Hill, 17 Mo. App. 590. (5) If the judgment debtor wished to avoid the revival of the judgment he should have pleaded such facts, if they existed, which would defeat the lien. Thompson v. Hammond, 1 Edw. Ch. 500; Colwell v. Easley, 83 Pa. St. 31; Hulett v. Mutual Life Co., 114 Pa. St. 143; Tallman v. Varick, 5 Barb. 282; Lafayette Co. v. Wonderly, 92 Fed. Rep. 313; Crumlick v. Shenandoah (W. Va.), 32 S. E. 234. (6) And failure of the judgment debtor to plead such alleged defense bars and estops him and those claiming under him from making such defense in this action. Shelbina Asso. v. Parker, 58 Mo. 327; Kelly v. Hurt, 74 Mo. 568; Walsh v. Bosse, 16 Mo. App. 237; Kopp v. Blessing, 121 Mo. 396, 397; Boroughs v. White, 69 Ga. 842. (7) The judgment of revivor on scire facias not only serves to continue the lien of the judgments but binds thereby all subsequent purchasers. Kratz v. Preston, 52 Mo. App. 253; Walsh v. Bosse, 16 Mo. App. 231; Lafayette Co. v. Wonderly, 92 Fed. Rep. 313; Miller v. Nicodemus (Neb.), 78 N. W. 618; Greer v. Major, 114 Mo. 157; Brown v. Wygant, 163 U. S. 618; Owens v. Henry, 161 U. S. 642; Colwell v. Easley, 83 Pa. St. 31; Thompson v. Hammond, 1 Edw. Ch. 503; Jackson v. Robins, 16 Johns.

(N. Y.) 579; Mortin v. Croghan, 20 John. (N. Y.) 106; Denegre v. Haun, 13 Iowa 240; Foster on Scire Facias, p. 30; 1 Freeman on Executions, (2 Ed.), secs. 81, 90, 92; Culb v. Ottenback, 92 Va. 517.   (8)   That a deed, though made in trust to secure a debt, passes to the grantee the whole estate of the grantor therein and vests the legal title to the land conveyed in the grantee, is the law of Missouri and a rule of real property.   Green v. Sutton, 50 Mo. 186; Shanawerk v. Holbrecht, 117 Mo. 30; Cornwell v. Orton, 126 Mo. 365.   (9) And if such deed, as in this case, contains provisions that the premises are let by the grantee to the grantors at the rate of one cent per month payable monthly, then a tenancy is expressly created.   That such tenancy is valid and the relation of landlord and tenant so created is entirely within the field of agreement between such parties, is well-established law. Sexton v. Hull, 45 Mo. App. 343; Wade v. McCormack, 68 Mo. App. 12; Building Ass'n. v. Murphy, 75 Mo. App. 57; Meier v. Meier, 105 Mo. 429; Live Stock Ass'n v. L. & C. Co., 138 Mo. 407; Gray v. Worst, 129 Mo. 133; Nicolls v. Stove Company, 48 Ill. App. 321; Hunt v. Comstock, 15 Wend. 665; Hall v. Comfort, L. R. 18 Q. B. D. 11; Ex Parte Voisey, L. R. 21 Ch. Div. 442; 1 Jones on Mtg's. (3 Ed.), sec. 79.

*Horace M. Baldwin, Clarence S. Palmer* and *W. J. Elliott* for respondents.

(1)   Proof that the note was antedated upon which judgment was rendered, through which plaintiff claims by his sheriff's deed, may be offered for the purpose of showing that Ingraham's homestead rights accrued prior to his incurring such indebtedness.   Such proof is not a collateral attack on the judgment.   Ingraham v. Dyer, 125 Mo. 500; Anthony v.

Rice, 110 Mo. 223; Murphy v. DeFrance, 105 Mo. 54; Baldwin v. Freydenthal, 10 Ill. App. 112; 2 Black on Judgments (1 Ed.), sec. 618. Where homestead is claimed, the burden of proof is on the creditor to show that his debt antedated homestead. Anthony v. Rice, 110 Mo. 223; overruling Murphy v. DeFrance, 105 Mo., as to this point. Note may be antedated, but it is binding only from delivery, except as to such questions as maturity of the note. 1 Daniel on Neg. Inst. (4 Ed.), sec. 65; 1 Parsons on Notes and Bills (2 Ed.), sec. 49. Like other contracts, a note or bill takes effect only upon its delivery for that purpose; and the time of delivery is in all cases a question of fact, and may be inquired into. 1 Randolph on Com. Paper (2 Ed.), sec. 77; Story on Promissory Notes (7 Ed.), sec. 48; Fritsch v. Heislen, 40 Mo. 555. (2) Sheriff's deed to appellant is void and a nullity, because the property attempted to be sold to plaintiff, and described in his sheriff's deed, was not subject to levy and sale in re Dyer v. Ingraham, having been occupied and held as a homestead by Ingraham free from the lien of the judgment in Dyer v. Ingraham, at the time it was conveyed to defendant's grantors herein. Ingraham v. Dyer, 125 Mo. 500. If execution issue it can reach property of defendant only. If property of a stranger is seized and sold, his title is not divested thereby. Freeman on Executions (2 Ed.), sec. 335. Sale of a homestead on execution is void whether plaintiff or a stranger becomes the purchaser. Murfee on Sheriffs (2 Ed.), sec. 1013; Wapples on Homestead and Exemptions, p. 731, sec. 14; Ratliff v. Graves, 132 Mo. 76. Where property is exempt from levy, a judgment or attachment can have no effect on title, or create any lien. The property is free and clear, and this, too, whether exemption is formally claimed or not. Vogler v. Montgomery, 54 Mo. 584; Davis v. Land, 88 Mo. 438; Kendall v. Powers, 96 Mo. 142; Grimes v. Portman, 99 Mo. 234; Wil-

son v. Stripe, 4 Greene (Iowa), 552; Dumbould v. Rowley, 113 Ind. 353; Ratliff v. Graves, 132 Mo. 76; Macke v. Byrd, 131 Mo. 688. Where property was exempt from judgment lien, it can not be sold in the hands of a purchaser under a judgment against the vendor, and if so sold, the sheriff's deed may be attacked collaterally in an ejectment action. Freeman on Execution (2 Ed.), sec. 249 D.; Holland v. Krider, 86 Mo. 59; Macke v. Byrd, 131 Mo. 682; Peake v. Cameron, 102 Mo. 568; Beckmann v. Meyer, 75 Mo. 336.

ROBINSON, J.—This is an action of ejectment to recover the possession of certain real estate in Kansas City, described as lot two, and the north ten feet of lot one, in block six, of the resurvey of Pendleton's Heights, an addition to Kansas City.

The petition is in the usual statutory form.

The amended answer, upon which the case was tried, admits that defendant Reynolds was in possession as the tenant of defendant Look, who, it is averred, is seized of an estate in fee simple therein, but denies generally the other allegations of the petition.

It is averred in the answer that the defendant Look derived title in the premises in question by warranty deed from John Look and wife, dated December 12, 1893, and that the latter acquired title through warranty deed from Dorson P. Ingraham and wife, the prior owners in fee, and also by deed from A. S. Van Valkenburg, trustee, both of said deeds bearing date October 24, 1893, duly acknowledged and filed for record on October 27, 1893; that the premises in question were deeded to Ingraham on May 27, 1886, and that the latter and his family went into possession of the same in June following, and occupied the premises as his homestead continuously until October 24, 1893.

The answer further avers that the plaintiff claims title to the premises described in the petition, by virtue of a sheriff's deed to him, dated February 9, 1895, made in pursuance of a sheriff's sale under an execution, issued upon a judgment rendered in the Jackson Circuit Court on December 4, 1889, in favor of L. B. Dyer and against Dorson P. Ingraham, from whom defendant derived title, which said case is numbered 3313 on the records of said court.   That on November 5, 1892, said Ingraham and his wife, in an action begun in the Jackson Circuit Court, on September 25, 1891, against Dyer, known as file No. 12,443, recovered a judgment against Dyer, to the effect that no cause of action accrued against Ingraham in case No. 3313, until October 21, 1886, and that Ingraham was entitled to a homestead in the land in controversy, at and previous to that date, and declared the lot in question free from the lien of the judgment in Dyer v. Ingraham et al., and perpetually enjoining Dyer, his agents, attorneys and employees from levying under execution issued on such judgment, and decreeing that said judgment should be deemed and held of no force and effect as to the premises in controversy.   It is further averred, that in violation of such injunction, execution was issued on the judgment rendered in the case of Dyer v. Ingraham et al., and the property in controversy sold thereunder to the plaintiff herein.

The amended answer further averred that the plaintiff was estopped from setting up title to the premises in question by virtue of the sheriff's deed, under which he claims, by reason of the judgment rendered in the case of Ingraham v. Dyer, No. 12,443, enjoining the latter from enforcing his judgment against the premises in controversy; that by reason of such judgment the question of homestead is *res adjudicata.*

It is further averred by the amended answer, that the plaintiff is not an innocent purchaser, in good faith, of the

premises in question, inasmuch as he took the same with full notice and knowledge of the judgment enjoining the sale thereof, and declaring that Ingraham was entitled to a homestead therein, as against the Dyer judgment.

The plaintiff's reply, eliminating the conclusions of law and the immaterial and irrelevant matter thereof, is in substance a general denial of the new matter contained in the amended answer. On the trial, defendant recovered judgment, from which plaintiff has appealed.

The record discloses that Dorson P. Ingraham was the common source of title, having acquired the lots in question, by warranty deed, from Charles A. Bamer and wife of date May 27, 1886, and recorded on the following day. That Ingraham and his family went into possession of the lots on the sixth of June following, and occupied the same as a homestead until it was sold to defendant's grantee, John Look, under the Van Valkenburgh deed of trust, on the twenty-fourth day of October, 1893. And at no time during the period covered by such occupancy did the homestead exceed the value and extent prescribed by statute. After the sale under the deed of trust, defendant Look took possession and Ingraham moved out. On December 4, 1889, L. R. Dyer obtained a judgment in the circuit court of Jackson county, against Dorson P. Ingraham et al., in case No. 3313, for $4,489.27, based upon a promissory note, dated February 1, 1886, payable to said Dyer on or before three years after the date thereof, signed by Henry S. Ingraham, Asa Ingraham and Dorson P. Ingraham. The evidence established beyond a doubt that the note upon which Dyer obtained such judgment, while it appears on the face to have been executed on February 1, 1886, was not, in point of fact, in existence or signed by said Ingraham until October 21, 1886, at which date Dorson P. Ingraham, at the request of, and as security for his father, Henry S. Ingraham, signed the same,

and the note was antedated in pursuance of an agreement between the principals of the note.    That on December 6, 1890, Ingraham and wife executed the deed of trust, upon the property in question, to A. S. Van Valkenburg, to secure the payment of certain notes therein named, amounting in the aggregate to $1,400, payable to Charles F. Emery Real Estate Loan Company, which was duly recorded on January 21, 1891. That on January 10, 1891, Charles A. Barkis and wife, from whom Ingraham originally acquired said lots, executed to said Ingraham a quitclaim deed, which contained the following recital:    "This deed is made in correction of a certain warranty deed between the parties hereto, dated May 27, 1886, and recorded in book 167 and page 262, in the recorder's office of Jackson county, Missouri, at Kansas City, the description in said prior deed being not sufficiently definite and certain, and this deed is further made to correct the name of said grantee, said name being improperly written Dorson C. Ingraham instead of Dorson P. Ingraham in said former deed, the intention being in said warranty deed of May 27, 1886, to designate Dorson P. Ingraham grantee therein."

That on September 25, 1891, Eva A. Ingraham, wife of Dorson P. Ingraham, filed with the recorder of deeds of Jackson county, a claim of homestead to the lot in question, and on the same day Dorson P. Ingraham and Eva his wife, instituted proceedings in the circuit court of Jackson county to enjoin the sale of said lots under the judgment in favor of L. R. Dyer v. Dorson P. Ingraham et al., in case No. 3313, on the ground that the same was the homestead of Dorson P. Ingraham, and as such exempt from sale under execution, and that the indebtedness, upon which the judgment was based, accrued on the twenty-first day of October, 1886, and not on February 1, 1886, as stated in the note upon which such judgment was rendered, and averring that the deed to his homestead was

recorded on May 28, 1886, and more than five months prior to the accruing of the indebtedness upon which said judgment in favor of Dyer was founded; that the trial, which took place on November 5, 1892, resulted in a judgment decreeing that the note on which such judgment was based was not executed and delivered until October 21, 1886, and that prior to that date Dyer had no cause of action against said Dorson P. Ingraham; that Ingraham was entitled to a homestead in the lots in question previous to the execution of said note, declaring said lots free from the lien of said judgment, and that Dyer be perpetually enjoined from levying on same; and that such judgment have no force and effect as to said property, which was afterwards affirmed on Dyer's appeal in Division Two of this court. [Ingraham v. Dyer, 125 Mo. 500].

Default having been made in the payment of the indebtedness secured by the deed of trust, the trustee named therein, on September 14, 1892, advertised and sold the lots in question to John Look, and on October 24, 1893, duly executed and delivered to said Look a trustee's deed therefor, and on the same day Ingraham, by warranty deed, in which his wife joined, also conveyed all his interest in said lots to John Look. Both deeds were filed for record on October 27, 1893, and on the twelfth day of December, 1893, John Look and wife conveyed the lots in question, to the defendant Frank Look, by warranty deed, which was duly recorded on January 11, 1895.

The lien of the Dyer judgment was duly revived on January 11, 1893, under a writ of scire facias, issued June 25, 1892. Plaintiff claims title to the lots in question by virtue of a sheriff's deed, made to him on February 9, 1895, in pursuance of a sale by the sheriff, under execution issued upon the Dyer judgment in case No. 3313, before mentioned.

On this state of facts, the court gave a peremptory instruction, directing judgment for defendants, and refused to give

plaintiff's instructions, numbered from two to five, inclusive, asserting his right to recover on the sheriff's deed, under the circumstances detailed.

The decisive question presented by this record is, whether Ingraham was entitled to a homestead in these lots, before the execution of the note upon which Dyer's judgment was founded. This necessarily involves the correctness of the action of the trial court in permitting defendant to show that such note was not executed or delivered by Ingraham until October 21, 1886, about five months after his deed to said lots was recorded. This precise question came up for review in the case of Ingraham v. Dyer, 125 Mo. 491, above mentioned, which was a suit by injunction to restrain the sale of the premises in question under the Dyer judgment, on the ground, among others, that the indebtedness upon which the judgment was based, did not accrue until October 21, 1886, several months after the deed to his homestead was obtained and recorded. It appeared there, as here, that the note upon which Dyer obtained judgment in December, 1889, was not in existence until October 21, 1886, and that on the latter date, Ingraham signed the same as security for his father, the note being antedated so as to appear on its face to have been given February 1, 1886, in pursuance of an agreement between Dyer and Ingraham's father.

In the course of that opinion it is said: "Did the circuit court err in permitting plaintiff to show that the note upon which defendant's judgment was founded was in fact not executed or delivered by plaintiff until five months after his homestead deed was recorded? .... So far as we are advised, no court has ever held, in this State, that the plaintiff was estopped by the date of his judgment or note upon which his judgment was obtained, from showing that the indebtedness accrued prior to the date of the note or judgment, for the pur-

pose of defeating a homestead. In so doing, it has never been supposed he was collaterally attacking his own judgment. If the plaintiff in the judgment, seeking to enforce it, or the grantee in the sheriff's deed under it, is not estopped from inquiring as to the date when the indebtedness accrued, why should the defendant, who claims the homestead, be estopped from showing the same. The fact is that, ordinarily, no such issue is involved in obtaining the judgment, and, unless it is, there is no reason for sustaining an estoppel and preventing the truth appearing, whether it is offered by plaintiff or defendant."

Tested by those principles, the trial court was right in permitting defendants to show that the note in question was antedated in pursuance of an agreement between the principals, to the note, and that in point of fact Ingraham, who was a mere security, did not sign the same until October 21, 1886, long after the acquisition of the homestead. The trial court, therefore, did not err in refusing the instructions asked by the plaintiff, and in giving the peremptory instruction directing judgment for defendants. This court has uniformly held that as between a judgment creditor and his debtor in possession of a homestead within the statutory value and extent, the judgment, on a debt created since the acquisition of the homestead, created no lien whatever on the homestead, and that the debtor is entitled to the full enjoyment of all his rights to the same, including the power of alienation. [Macke v. Byrd, 131 Mo. 682, and cases cited.]

Ingraham having acquired a homestead in the lots in question, before the indebtedness accrued upon which the Dyer judgment was based, and continued to occupy the same as a homestead for himself and family until it was sold under the Van Valkenburg deed of trust, the same was clear and free

from the judgment lien, under the homestead statute.

If, as we hold, the lien of such judgment did not attach to the homestead, then the judgment was no impediment to a sale or mortgage of the homestead by Ingraham, and the purchaser at the trustee's sale under the deed of trust acquired perfect title, free and discharged from the lien of such judgment.

Then, as John Look acquired a perfect title to the lots in question, by virtue of the trustee's deed to him, in pursuance of a sale by such trustee, and as his title has passed to the defendant, Frank Look, our conclusion is that the defendant Frank Look's title to the lots in question stands unaffected by the sheriff's deed offered in evidence by the plaintiff.

Appellant's next contention is that the Van Valkenburg deed of trust operated as a waiver of Ingraham's homestead rights, if any, because of the clause therein creating the relation of landlord and tenant, which, it is contended, was inconsistent with a homestead.   This is a clear misapprehension of the situation.   A homesteader does not lose his rights as such, as to third parties, by mortgaging his homestead, however he may designate himself therein, or become bound to the mortgagee; but so long as he occupies the premises as such, with his family, it is exempt from attachment and sale under execution, if not in excess of the value and extent prescribed by statute, as to all creditors, save and except the mortgagee and those claiming under him.   This point was also decided adversely to plaintiff's contention in Ingraham v. Dyer, supra; but even if plaintiff's contention were right, it is not perceived how the defendant Look, who derived title under the deed of trust, could be affected by what the grantor therein afterwards did regarding the land.

Another contention of appellant is that the failure of Ingraham to claim or set up his homestead, in the proceedings to revive the judgment, precludes him and those claiming under

him, from setting up or claiming that the lots in question was a homestead, and thereafter exempt from sale under execution. This position is not tenable. A proceeding by scire facias to revive a judgment is the continuation of the original action, and merely ancillary thereto, and not a new suit or an original proceeding. It does not operate to create a new lien, but merely to continue in force one already in existence; it is simply a call upon the debtor to show cause why execution should not issue, and if no cause is shown, judgment goes that the plaintiff have execution. Although it partakes somewhat of the nature of a new action, in that the judgment debtor may show in defense those matters and things which go to his discharge since the rendition of the original judgment, yet it is entirely settled in this State that when a writ of scire facias is used to revive a judgment, it is merely a further proceeding in the same action and based on the original judgment. Hence, the doctrine of *res adjudicata* does not apply. [Sutton v. Cole, 155 Mo. 206.] The question of homestead had nothing to do whatever with Ingraham's indebtedness on the original judgment, and the existence or non-existence thereof did not tend to discharge him from the judgment indebtedness. No such issue was involved in obtaining the judgment, and unless it was, there would be no reason in holding his failure an estoppel and preventing his grantees from showing that the lots in controversy constituted a homestead. The doctrine is well established that a judgment is only conclusive as to such matters as could properly have been adjudicated in the former suit. As already seen, no such question was involved, either in obtaining the original judgment, or in the proceedings to revive same. [2 Black on Judgments (1 Ed.), sec. 618; Ingraham v. Dyer, 125 Mo. 491.]

The final objection made by appellant is that the court erred in admitting, over plaintiff's objection, the testimony

taken before the special commissioner, because such commissioner failed to take the oath of office. This objection comes too late now. Rule 17 of the Jackson Circuit Court requires that all such objections must be made and determined before the trial court, which was not done in this case, and so this objection will be now ruled against the plaintiff. The rule is in no wise unreasonable, nor does it tend to thwart the ends of justice.

Having reached the conclusion that no title was acquired by plaintiff, under the sheriff's deed to him made in pursuance of a sale by the sheriff, under an execution issued upon the Dyer judgment against Ingraham, it will be unnecessary to consider the other questions discussed by counsel for plaintiff.

Under the pleadings and evidence the judgment was for the right party and will, therefore, be affirmed. All concur.